**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**JET DRIVE GENERAL MARINE MANUFACTURING CO., INC.,**

        Plaintiff,

   - against -

**SCOTTSDALE INSURANCE COMPANY,**

        Defendant.

---

19-cv-1886 (JGK)

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Jet Drive General Marine Contracting Co., Inc., ("Jet Drive") brings this action against the defendant, Scottsdale Insurance Company ("Scottsdale"). The plaintiff seeks money damages and a declaratory judgment arising out of the alleged failure of the defendant to return unearned premiums for General Liability Policy No. NCS0001044 (the "Policy") issued by Scottsdale to Jet Drive. The plaintiff alleges that the defendant breached the parties' contract by failing to return sufficient premiums to the plaintiff when the plaintiff cancelled the policy two days before its expiration date. This case therefore turns on the proper interpretation of the termination provisions of the Policy.

The defendant has moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For

1

the following reasons, the defendant's motion to dismiss is **granted**.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When

presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The following facts alleged in the Complaint are accepted as true for the purposes of ruling on the motion to dismiss. On or about March 1, 2017, Jet Drive entered into a general liability insurance contract with Scottsdale, effective for a one-year term. Compl. ¶¶ 9, 11. The Policy included an endorsement entitled "Minimum and Advance Premium/Minimum Earned Cancellation Endorsement" (the "Endorsement"), id. at ¶ 10, and a Minimum Premium of $285,800.00, Compl. Ex. B. The Endorsement contained the operative contractual language that governed Scottsdale's entitlement to retain the Minimum Premium and a provision for Jet Drive's entitlement to any return premium upon cancellation. Id. In the Endorsement, the following terms were defined:

> Advance Premium means the premium for this Coverage Part that is stated in the policy declarations and payable in

> full by the first Named Insured at the inception of the policy.
>
> Audit Premium means the premium for this Coverage Part that is developed by calculating the difference between the Advance Premium and the Earned Premium.
>
> Earned Premium means the premium for this Coverage Part that is developed by applying the rate(s) in the policy to the actual premium basis for the audit period.
>
> Minimum Premium means the lowest premium for which this Coverage Part will be written for the policy period.

Compl. ¶ 13. The Endorsement further contained the following clause regarding premiums (the "Premium Clause"):

> Premium shown in this Coverage Part as Advance Premium is a deposit premium only. At the close of each audit period we will compute the Earned Premium for that period and a billing notice of any Audit Premium due will be sent to the first Named Insured....If the sum of the Advance Premium and Audit Premiums is greater than the Earned Premium, we will return the excess to the first Named Insured, *subject to us retaining a Minimum Premium as shown above in the Schedule*, including any premium adjustment made by endorsement to this policy during the policy period.

Id. at ¶ 14 (emphasis added). Finally, the Endorsement contained a clause (the "Cancellation Clause") providing that "[i]f you request cancellation of this Coverage Part or policy, we will retain *not less* than twenty-five percent (25%) of the Advance Premium, unless otherwise shown below. _____ %." Id. at ¶ 15 (emphasis added). The Policy did not provide for any specific percentage value in the blank space. Id. at ¶ 16.

On or about February 27, 2018, with only two days remaining on the Policy term, Jet Drive cancelled the Policy through notice to Scottsdale's insurance agent at Alliant Insurance Services, Inc. ("Alliant"). Id. at ¶¶ 9, 11, 19. On or about March 12, 2018, Alliant raised an issue with its Scottsdale agent, CRC Insurance Services Inc. ("CRC") about the return premium.[1] Id. at ¶ 25. After a series of emails between Alliant, CRC, and Nationwide, CRC offered Jet Drive a return premium of $1,429.00 to account for the unearned premiums for the final two days before the Policy expired. Id. at ¶¶ 25-27, 30, 43. The plaintiff alleges that instead of $1,429.00, it is entitled to receive, at a minimum, the difference between the Earned Premium ($127,895.00) and the Advance Premium ($285,800.00),[2] which amounts to $157,905.00 of requested relief.[3] Id. at ¶¶ 20-21.

The plaintiff filed this action on April 17, 2019. The complaint seeks damages totaling $156,476.00, plus interest, as well as attorneys' fees, costs, and disbursements incurred. Id. at ¶¶ 53, 58. Additionally, the plaintiff seeks a declaration that

---

[1] CRC's decision to offer a return premium was authorized by Nationwide Mutual Insurance Company ("Nationwide"), Scottsdale's parent insurance company. Compl. ¶¶ 26, 27.

[2] In this particular policy, the "Advance Premium" and "Minimum Premium," while separately defined, are both equal to $285,800.00.

[3] The New York State Department of Financial Services, in response to a complaint filed by the plaintiff, stated, "It appears that [Scottsdale] has conducted itself in accordance with the terms of their policy. We have found no evidence that they have violated New York State Insurance Laws or Regulations." Compl. Ex. M at 2.

5

upon cancellation, under the Policy, Jet Drive is entitled to the difference between the Advance and Earned Premiums in the sum of $157,905.00. Id. at ¶ 63.

### III.

The defendant argues that the insurance contract is unambiguous, and it was entitled to retain the Minimum Premium under the Policy. Therefore, the complaint should be dismissed because it seeks the return of allegedly unearned premiums irrespective of the Minimum Premium to which the defendant claims it was entitled under the Policy. The plaintiff argues that because it cancelled the Policy before termination, no Minimum Premium was due.

### A.

Under New York law, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." White v. Continental Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007). Insurance contracts "must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." Cragg v. Allstate Indem. Corp., 950 N.E.2d 500,502 (N.Y. 2011). However,

> [c]ontract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is

> cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotations and citations omitted). "The burden, a heavy one, is on the insurer, and [i]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer." Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co., 788 N.Y.S.2d 142, 144 (App. Div. 2004)(internal quotations and citations omitted). On the other hand, a contract is not ambiguous if the language used has a definite and precise meaning. See Selective Ins. Co. of Am. v. Cty. of Rensselaer, 47 N.E.3d 458, 461 (N.Y. 2016). "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." In re Estates of Covert, 761 N.E.2d 571, 576-77 (N.Y. 2001) (quoting Hartol Prods. Corp. v. Prudential Ins. Co. of Am., 47 N.E.2d 687, 689 (N.Y. 1943)).

The plaintiff argues initially that the only reasonable interpretation of the Endorsement in the event of a cancellation is to permit a refund of unearned premiums because, if

7

Scottsdale were able to retain not less than the Minimum Premium, the Cancellation Clause would be superfluous. The plaintiff argues that in the event of a cancellation, the Cancellation Clause prevails, and the Premium Clause is irrelevant. However, this contention misreads the contract. The Premium Clause unambiguously provides that Scottsdale will return excess amounts to Jet Drive when the sum of the Advance Premium and Audit Premium is greater than the Earned Premium, "subject to us retaining a Minimum Premium as shown above in the Schedule." Nothing in the Cancellation Clause overrides that provision.

If the Policy is cancelled prior to the contract expiration, the Premium Clause in the Endorsement permits Scottsdale to retain the scheduled Minimum Premium. The Cancellation Clause provides that upon cancellation of the Policy, Scottsdale maintains the right to "retain *not less* than" 25% of the Advance Premium (emphasis added). Nowhere does it state that Scottsdale may not retain more than 25%. And nowhere does the Cancellation Clause purport to override the Premium Clause. The plaintiff appears to read the Cancellation Clause in the exact opposite fashion, stating that Scottsdale is entitled to retain *only* or *at most* 25% of the Advance Premium. However, the plain and ordinary meaning of "not less than" is *at least*, not at most. Thus, the plain meaning and reasonable expectations

8

of the insured here can only be that Scottsdale may retain, at the very least, 25% of the Advance Premium, and at most, the entirety of the scheduled Minimum Premium. The Premium Clause in the Endorsement in turn allows Scottsdale to retain the Minimum Premium. To read the clause in any other way would provide an incentive for an insured to cancel a policy shortly before its scheduled termination in order to deprive the insurer of the Minimum Premium. That could not have been the reasonable intent of the parties.

The plaintiff's second argument is that the Endorsement is susceptible to more than one reasonable meaning, and that the motion to dismiss should therefore be denied. The plaintiff relies on the unsupported propositions that the Endorsement could be interpreted in multiple ways, creating ambiguity. These interpretations include: (1) the Cancellation Clause takes priority over the Premiums Clause, and is the only provision which governs cancellations, and (2) the Cancellation Clause would be rendered irrelevant or meaningless if Jet Drive is not permitted to eliminate the Minimum Premium from the Policy. These readings of the Endorsement are contrary to the plain meaning of the Policy.

First, there is nothing in the contract to support the argument that the Cancellation Clause supersedes any other

9

provision within the Endorsement. If the meaning of contractual language is otherwise plain, the language "does not become ambiguous merely because the parties urge different interpretations in the litigation . . .[and] no ambiguity exists where the alternative construction would be unreasonable." Law Debenture Tr. Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (internal citations omitted); see also Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 37 N.E.3d 78, 80 (N.Y. 2015) ("[P]arties cannot create ambiguity from whole cloth where none exists, because provisions are not ambiguous merely because the parties interpret them differently.") (internal quotations and citations omitted). There is no ambiguity or inconsistency between the Premium Clause and Cancellation Clause. In this case the Advanced Premium is the same as the Minimum Premium. The Premium Clause allows the defendant to retain the Minimum Premium. The Minimum Premium in the Endorsement is $285,800.00, which is "not less than" the 25% of the Advance Premium that the defendant is entitled to retain under the Cancellation Clause. Therefore, the Minimum Premium is consistent with the amount Scottsdale may retain upon cancellation, and this should align with the reasonable expectations of the insured.

Second, the Premium Clause does not conflict with the Cancellation Clause, nor does it render the Cancellation Clause

superfluous. To the contrary, the Premium and Cancellation clauses work in tandem. As the defendant argues in its Reply Memorandum, if Jet Drive had elected to cancel the Policy 30 days into the term, the Cancellation Clause would govern the plaintiff's refund. Def. Reply at 2. In that scenario, while the *pro rata* premium to Scottsdale would amount to $23,492.76,[4] because the Cancellation Clause entitles Scottsdale to retain "not less than" 25% of the Minimum/Advance Premium, the defendant could retain at least $71,450.00. Id. In this way, the Cancellation Clause protects Scottsdale's investment in underwriting and selling the policy in the event that there is an "early" cancellation. However, the Cancellation Clause does not, on its own, determine the refund for a "late" cancellation.[5] In the event of a late cancellation, as existed here, the Premium Clause is triggered, and Scottsdale is entitled to retain the full Minimum/Advanced Premium. The Cancellation Clause simply informs Jet Drive that if it chooses to cancel the Policy early into the policy term, Scottsdale may keep at least 25% of the Advance Premium. Accordingly, the two clauses are not inconsistent or ambiguous.

---

[4] 30 days is 8.22% of 365 days. 8.22% of the Minimum Premium is $23,492.76.

[5] Here, "late" cancellation refers to the point where the *pro rata* premium refund would exceed 25% of the Minimum/Advance Premium, whereas "early" cancellation is any point prior to then, such as the example provided above.

The factual circumstances in S.A.F. La Sala Corp. v. CNA Ins. Cos., 737 N.Y.S.2d 353 (App. Div. 2002), while not identical, can serve as a helpful guidepost. In S.A.F., the insured brought suit against its insurer to recover a premium refund, also arguing that the insurer retained more than it was entitled. See id. at 355. The endorsement in S.A.F. contained an almost identical heading that read "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY,"[6] and similarly provided that if the earned premium was less than the advance premium paid, "the company shall return to the named insured the unearned portion paid but not less than the Minimum Premium shown in the schedule." Id. at 354. The court stated, "the endorsement clearly, although awkwardly, provides that [Insurer] would retain the minimum premium even if the actual premium was less," and that to provide otherwise would constitute "an unreasonable and illogical interpretation of the language of the endorsement." Id. at 355. For that reason, the appellate court reversed the trial court's ruling and granted summary judgment to the insurer, holding that the premium endorsement was clear and unambiguous on its face and entitled the insurer to retain the Minimum Premium. Id. The same reasoning applies here. In the case where the Policy is cancelled two days before its

---

[6] Compl. Ex. B at 1.

expiration, the plain and ordinary meaning of the Endorsement, and reasonable expectation of the insured, can only be that Scottsdale is entitled to the full Minimum Premium.[7]

**B.**

The plaintiff also argues that Scottsdale itself offered at least four different interpretations of the policy in its correspondence with the plaintiff and that this extrinsic evidence alone should render the Endorsement ambiguous. "But New York law is well settled that a written agreement that is complete and unambiguous is to be interpreted without the aid of extrinsic evidence and that industry practice may not be used to vary the terms of such a contract." Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 69 (2d Cir. 2014) (internal citations omitted). As explained above, the Policy in this case is unambiguous and plain on its face, eliminating the need to consider any extrinsic evidence.

---

[7] While the defendant was entitled to retain the full Minimum Premium under the Policy, the defendant explained at oral argument that the return premium was offered pursuant to clause (A)(5) of the "Common Policy Conditions." Compl. Ex. A at 5. This provision states in relevant part, "[i]f this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata." Id. (emphasis added). Thus, while the defendant was entitled to keep the Minimum Premium and provide the plaintiff with a refund less than pro rata, it chose to provide the plaintiff with a fully pro-rated amount of $1,429.00.

Therefore, based on the definite, plain and unambiguous wording of the Endorsement, Scottsdale is entitled to retain the full Minimum Premium, and Jet Drive has failed to state a claim for relief.

**CONCLUSION**

For the reasons stated above, the defendant's motion to dismiss the plaintiff's claims for breach of contract and declaratory relief is **granted.** The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close this case and to close all pending motions.

**SO ORDERED.**

**Dated:  New York, New York**
**December 11, 2019**          ____/s/ John G. Koeltl_____

**John G. Koeltl**
**United States District Judge**